### MULLIGAN v. STRAUSS et al.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. EMINENT DOMAIN ☞52—WATER SUPPLY—RESERVOIR—LAND TAKEN.
　　The condemnation by the city of New York of land for a stone quarry for use in constructing a water reservoir, and to relocate a highway and railroad within the drainage area of the Esopus creek, such land being at an elevation greater than 600 feet, was not prohibited by Laws 1905, c. 724, § 3, as amended by Laws 1906, c. 314, prohibiting the construction of reservoirs in such area whose flow line exceeds such elevation, since such provision of the section applies only to the flow line of reservoirs, and not to property taken for other necessary purposes.

　　[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 121–130; Dec. Dig. ☞52.]

2. EMINENT DOMAIN ☞186—NEW YORK CITY—WATER SUPPLY—CONDEMNATION OF LAND—SUBMISSION OF MAPS.
　　Condemnation of such land was not invalidated by the fact that the city failed to submit maps of the land proposed to be acquired for reservoir purposes, including the land in question, since the provisions of Laws 1905, c. 723, §§ 2, 3, and chapter 724, § 46, requiring the submission of maps, plans, and profiles of proposed water supply works to the state water supply commission, call only for general maps indicating the territory affected and the source of supply.

　　[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 500–504; Dec. Dig. ☞186.]

Appeal from Special Term, Ulster County.

Action by Joseph T. Mulligan against Charles Strauss and others to restrain the acquisition of property for water supply purposes; and

the allowance of warrants in payment therefor. From certain portions of an order sustaining a demurrer to the complaint for want of facts, plaintiff and defendant Jerome H. Buck appeal. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, and WOODWARD, JJ.

R. Dulany Whiting, of New York City, for appellant Mulligan. Thomas Gilleran, of New York City, for appellant Buck.

Lamar Hardy, of New York City (William McMurtrie Speer, of New York City, of counsel), for respondents.

LYON, J. This action has been brought by a taxpayer of the city of New York to obtain a judgment permanently restraining the defendants, the city of New York, the commissioners of the board of water supply of the city of New York, and the comptroller of said city, from taking any steps towards acquiring the real property of defendant Buck, or using the same for water supply or other purposes, and to restrain the comptroller from allowing or approving any warrants for the payment of money from the treasury of the city of New York with reference to such property. The city of New York and the defendant officers of that city interposed a demurrer to the complaint upon several grounds. The court denied the motion made by the plaintiff, which the order granted thereon recites was supported by the defendant Buck, for judgment upon the complaint and demurrer, and sustained the demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action, but overruled it as to the other grounds. From such order this appeal has been taken by the plaintiff and by the defendant Buck.

The property in question consists of about 145 acres of land, known as "Parcel No. 7, section 1," situated in the county of Ulster, N. Y., near the Ashokan dam, upon which land the plaintiff alleges that the Yale quarry is located. Part of this land is below the flow line of the reservoir and is covered by water; part of it is used for the purpose of the relocated highway, and of a relocated railroad; and part of it is occupied by quarry machinery. The city of New York, through its board of water supply, took possession of said land, and has, as plaintiff alleges, permitted its contractors to take therefrom and use in the construction of the dam and dykes of the Ashokan dam, upwards of 500,000 cubic yards of blue stone. The city of New York claims to have acquired title in fee to the property by virtue of chapters 723 and 724 of the Laws of 1905 and chapter 314 of the Laws of 1906, and the proceedings taken pursuant thereto, and that such title became vested in the city upon the filing by the commissioners of appraisal of their oaths of office in May, 1907, which, however, does not appear by the complaint.

The plaintiff disputes the claim of title of the city of New York to said land, alleging that the city never had the right to acquire title thereto for two reasons: (1) That a considerable portion of this land was outside the flow line of the reservoir, and a large portion of it at an elevation of considerably over 600 feet, Coast and Geodetic Survey datum, in violation of the provisions of section 3 of chapter 724

of the Laws of 1905, as amended by chapter 314 of the Laws of 1906, providing that no water storage reservoir should be constructed within the drainage area of Esopus creek, the flow line of which should exceed elevation 600 feet, Coast and Geodetic Survey datum. (2) That neither the city of New York nor the board of water supply of said city at any time submitted any maps, plans, or profiles of the lands which it proposed to acquire and use to the state water supply commission, pursuant to the requirements of chapters 723 and 724 of the Laws of 1905 and the amendments thereof, nor filed with the state water supply commission any maps upon which were indicated the Buck land, and did not obtain the approval of the state water supply commission to any maps upon which said land was designated.

[1] With reference to the first proposition of the appellants, it is plain that the provision of said section 3 that "no reservoir, or other structure for the storage or impounding of water shall at any time be constructed within the drainage area of Esopus creek * * * the flow line of which shall not exceed elevation 600 feet, Coast and Geodetic Survey datum," applied only to the flow line of the reservoir, and had no application whatever to the lands which might be taken for the purposes of relocating highways or railroad, or for the purposes of construction or maintenance of the reservoir, dams, aqueducts, and appurtenances, and the protection of the waters of the reservoir from contamination by surface drainage and otherwise. Matter of Gilroy, 32 App. Div. 216, 52 N. Y. Supp. 990. It has also been held by this court in Matter of Application of the Board of Water Supply of the City of New York to Acquire Real Estate * * * Ashokan Reservoir, Parcel No. 7, Jerome H. Buck, Appellant, the City of New York, Respondent, reported, without opinion, 166 App. Div. 952, 151 N. Y. Supp. 1105, that the limitation as to elevation described by said section 3 related only to the reservoir itself, and had no application to the lands which may be condemned under the acts for the general purposes of the reservoir, situated outside the flow line and embraced within the taking line.

[2] With reference to the second proposition of the appellants, section 3 of chapter 723 of the Laws of 1905, entitled "An act to establish a state water commission, to define its powers and duties, * * *" provided:

"Any municipal corporation * * * may make application by petition in writing to the state commission for the approval of its maps and profiles of such new or additional source or sources of water supply for such municipal corporation. * * * Such application shall be accompanied by an exhibit of maps of the lands to be acquired and profiles thereof showing the sites and areas of the proposed reservoirs and other works, the profiles of the aqueduct lines and the flow lines of the water when impounded, plans, surveys and abstracts of official reports relating to the same, showing the need of such municipal corporation for a particular source or sources of supply and the reasons therefor. * * *"

The section then provided for the giving of public notice of a meeting of the state water supply commission—

"for the purpose of hearing all persons, municipal corporations or other civil divisions of the state that may be affected thereby. * * * The com-

mission shall determine whether the plans proposed by such municipal corporation or other civil division of the state are justified by public necessity, and whether such plans are just and equitable to the other municipalities and civil divisions of the state affected thereby and to the inhabitants thereof, particular consideration being given to their present and future necessities for sources of water supply. * * * "

Plainly the maps and profiles required by this section to be furnished to the state commission were intended to be general in their character, indicating the territory affected and the sources of water supply, and not detail maps, specifying the various parcels of property which might be taken, should the petition be granted as asked, and few or none of which might be required to be taken under the modification of location which the state commission was empowered to make. It was held (In the Matter of the Application and Petition of Charles Strauss et al., etc., 167 App. Div. 162, 152 N. Y. Supp. 1038) that, where the state water supply commission had approved plans showing the general line of construction, it was not necessary to submit to the commission the condemnation maps.

Section 2 of chapter 723 of the Laws of 1905 provided that no municipal corporation should have any power to take, acquire, or condemn lands for any new or additional sources of water supply until it had first submitted the maps, plans, and profiles therefor to the state water supply commission, and until said commission shall have approved the same. Section 46 of chapter 724 of the Laws of 1905 contained practically the same provision. The plaintiff alleges:

"IX. Upon information and belief that neither the city of New York, nor the board of water supply of said city, at any time submitted any maps, plans, and profiles of the lands which it proposed to acquire and use, to the state water supply commission, pursuant to chapter 724 of the Laws of 1905 and the amendments thereof, and pursuant to chapter 723 of the Laws of 1905 and the amendments thereof, and did not file with the state water supply commission any maps upon which were indicated the property of the said defendant Jerome H. Buck, and did not obtain the approval of the said state water supply commission to any maps upon which were designated the aforesaid property of the said defendant Jerome H. Buck."

The first section of this clause, taken alone, would be held to allege noncompliance with the condition precedent imposed by the abovementioned statutes. It is apparent, however, that it was not the intention of the plaintiff to claim that no maps, plans, nor profiles whatever were ever filed with the state water supply commission, but simply to allege that none were ever filed upon which was designated the parcel of land of the defendant Buck. This the plaintiff construed the act to require, and that, as none such had been filed, none were ever filed pursuant to the statute. This construction is apparent, not only from other allegations of the complaint, notably that of the fourteenth clause:

"That it does not appear that the said defendant Jerome H. Buck was identified, nor his aforesaid property identified, on any maps, plans, and profiles filed by the city of New York, or by any other of its officials or agents, and approved by the said state water supply commission, and no additional maps, plans, and profiles were ever submitted to the said state water supply commission."

But no such claim is made by the plaintiff in his brief. On the other hand, he says:

"Not only did the city of New York not file with the state water supply commission any map showing the lands to be acquired, but in this case even the blotch of red and blue paint which the city did file with the state water supply commission does not contain within its outermost boundaries the land of the defendant Buck."

Furthermore, neither the submission to the Special Term nor to this court was upon the theory that no maps, plans, and profiles whatever had ever been submitted to the state water supply commission, but simply that none had been submitted upon which the land of the defendant was designated. The portion of the order appealed from should be affirmed.

Order, so far as appealed from, affirmed, with $10 costs and disbursements to respondent, with usual leave to amend on payment of costs in this court and in the court below. All concur.